# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Causey and Senior Judge Clements
Argued by videoconference


RUDOLPH ALEXANDER WATSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1350-20-1                     JUDGE JEAN HARRISON CLEMENTS
                                                    DECEMBER 14, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Timothy S. Wright, Judge

Terence P. Martin, Deputy Public Defender, for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


The trial court convicted appellant of possession with the intent to distribute a Schedule I or

II drug, in violation of Code § 18.2-248. On appeal, he argues that the evidence was insufficient to

prove that he both possessed and had the intent to distribute the drug. Finding no error, we affirm

his conviction.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth,

295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). On April 19,

2019, at approximately 8:40 p.m., Officer Moorman of the City of Chesapeake Police

Department observed a Chevy Impala operating with the right headlight out. Moorman activated

his siren and emergency lights to conduct a traffic stop and pull over the Impala. Moorman

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

parked behind the Impala, which had pulled into a residential driveway, and opened the door to get out. As Moorman got out of his vehicle and introduced himself, appellant was standing outside the Impala.

While Moorman was telling appellant that one of his headlights was out, he noticed that appellant was acting suspiciously by "blading" his body in an apparent attempt to conceal his left hand. Moorman noticed in appellant's left hand a plastic bag. As Moorman walked around appellant to show him his headlight, appellant moved his left hand into the front pocket of his coat. When appellant pulled his hand out of the coat, his left hand was empty. Moorman used his flashlight to look into appellant's coat pocket and saw the same plastic bag that he originally saw in appellant's left hand. Moorman described it as "the bitter end of plastic that was torn."

Moorman asked appellant "what did you put in your pocket," to which appellant responded by turning and running away. Moorman quickly apprehended appellant, approximately five to ten yards from his police vehicle. When Moorman reached appellant in the short chase, appellant "went head over heels" and "rolled forward, hitting the ground." Once appellant was handcuffed and secured, Moorman could not find the plastic bag in appellant's pocket.

After walking appellant to the police car, Moorman found a plastic bag on the ground near where the chase occurred. Described as a "corner baggie," it contained nineteen smaller plastic bags and one larger bag, all of which contained a substance later determined by forensic analysis to be cocaine. Moorman recalled that while he did not see the plastic bag fall from appellant's pocket during the short chase, Moorman identified the bag as being consistent with the plastic bag that he saw in appellant's left hand and coat pocket. While Moorman admitted that he did not search the area before his interaction with appellant, there were no other individuals or plastic bags on the ground in the vicinity. Altogether, the plastic bag and contents

weighed 6.08 grams. The nineteen smaller bags of cocaine totaled 2.69 grams, and the larger bag of cocaine weighed 3.39 grams. No cocaine ingestion devices were located on appellant or in his vehicle. Appellant was then charged with possession with the intent to distribute a Schedule I or II drug.[1]

At trial, Detective Souther of the City of Chesapeake Police Department testified as an expert in drug distribution and narcotics. Souther concluded that the evidence was inconsistent with personal use of cocaine. She pointed to multiple factors which led to this decision. First, there were nineteen individual bags all packaged similarly, with an additional larger bag of cocaine. She testified that, from her training and experience, the nineteen smaller bags were for distribution. Regarding the bigger bag of cocaine, she stated that when dealers sell out of the smaller bags, they typically would break up the bigger bag into smaller bags to sell. Second, she stated that the most cocaine she had seen an individual use was an "8-ball," which is 3.5 grams. Here, the plastic bag contained around 6 grams of cocaine. She stated that from her experience, the purchaser of cocaine will use it within thirty minutes to an hour. Third, Souther thought it was important that the street value was more expensive than the typical cocaine buy. She estimated the street value of all the cocaine to be between $300 to $600. She opined that the typical cocaine user does not spend that much money on a cocaine buy. Souther went on to state that she had never seen a user spend $300 to purchase cocaine. The last factor she considered important was that there were no ingestion devices found on the scene.

Appellant moved to strike the evidence, arguing that there was insufficient evidence to support the charge for possession of the cocaine with the intent to distribute. The trial court denied appellant's motion. The trial court found that, given all the evidence, there was an

_____

[1] Appellant was also charged with obstructing justice, which was later dismissed by the trial court upon motion by appellant. The trial court found that there was insufficient evidence to support the charge.

inference that the cocaine came out of appellant's pocket. Next, given the expert testimony, the trial court found that appellant had the requisite intent to distribute the cocaine. Finally, the trial court concluded that appellant was guilty of possessing a Schedule I or II drug with the intent to distribute. This appeal follows.

ANALYSIS

Appellant challenges the sufficiency of the evidence to convict him of possession with the intent to distribute the cocaine. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Smith v. Commonwealth, 296 Va. 450, 460 (2018) (alteration in original) (quoting Commonwealth v. Perkins, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Secret v. Commonwealth, 296 Va. 204, 228 (2018) (alteration in original) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Vasquez v. Commonwealth, 291 Va. 232, 248 (2016) (quoting Williams v. Commonwealth, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

Appellant makes two main arguments for why there was insufficient evidence to convict him. First, appellant argues that the evidence was insufficient to prove that he possessed the cocaine that was discovered on the ground near where the chase occurred. He reasons that because Moorman did not search the area beforehand, the plastic bag of cocaine could have been

- 4 -

there prior to the short chase. Additionally, cocaine was never specifically seen in appellant's hand, and Moorman did not see appellant throw or drop the bag.

"In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." Yerling v. Commonwealth, 71 Va. App. 527, 532 (2020). In proving possession, as with any other element, "circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Finney v. Commonwealth, 277 Va. 83, 89 (2009) (alteration in original) (quoting Dowden v. Commonwealth, 260 Va. 459, 468 (2000)).

There are multiple pieces of circumstantial evidence which could lead a rational fact-finder to believe beyond a reasonable doubt that appellant possessed the cocaine. Moorman testified that appellant was acting suspiciously from the beginning of the traffic stop. Appellant immediately exited his vehicle and was "blading" his body, attempting to hide his left hand from Moorman, which Moorman noticed held a plastic bag. Then, when Moorman moved around appellant to show that appellant's headlight was out, appellant moved his hand holding the bag into his coat pocket. Moorman again noticed the same plastic bag in his coat pocket. When Moorman asked appellant what was in his pocket, appellant immediately fled, further providing evidence of his guilt. See Johnson v. Commonwealth, 12 Va. App. 150, 153 (1991) (holding that defendant's flight from the scene may be "some evidence of guilty knowledge," and a finder of fact could "infer the [defendant] possessed the drugs at the time he began to run").

The trial court was free to infer that the plastic bag containing cocaine found on the ground nearby after the chase was the same bag seen in appellant's hand and pocket. We must give deference to the trial court "not only to findings of fact, but also to any reasonable and

justified inferences the fact-finder may have drawn from the facts proved." Sullivan v. Commonwealth, 280 Va. 672, 676 (2010) (citing Johnson v. Commonwealth, 209 Va. 291, 295 (1968)).

Even though Moorman did not thoroughly inspect the area prior to his pursuit of appellant, they were in a residential area with nobody else nearby, and the trial court could reasonably infer that due to the value of the drugs, it was unlikely to have been abandoned. See Collins v. Commonwealth, 13 Va. App. 177, 180 (1991) (noting that the trial court could "discount" the possibility of drugs being abandoned because "the cocaine was 'something of significant value and not something that one is likely to have abandoned or carelessly left in the area there'"). Moorman testified that the plastic bag found on the ground was consistent with the plastic bag in appellant's hand and pocket. With no other plastic bags found in the vicinity, and the bag no longer on appellant's person after the chase, the trial court was not clearly wrong in concluding that appellant possessed the bag of cocaine.

Second, appellant argues that the Commonwealth failed to prove he had the intent to distribute the cocaine because of the absence of large sums of money, scales, and a firearm. Furthermore, he argues that the weight and value were not to the point to exclude personal use.

"Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Scott v. Commonwealth, 55 Va. App. 166, 172 (2009) (*en banc*) (alteration in original) (quoting Servis v. Commonwealth, 6 Va. App. 507, 524 (1988)). Accordingly, the fact-finder may consider such factors as "the quantity of the drugs discovered, the packaging of the drugs, and the presence or absence of drug paraphernalia." Shackleford v. Commonwealth, 32 Va. App. 307, 327 (2000).

Here, an expert testified that the presence of cocaine was inconsistent with personal use. "'Expert testimony, usually that of a police officer,' is one factor or circumstance which the fact

finder may consider in determining whether drugs were possessed with intent to distribute." Askew v. Commonwealth, 40 Va. App. 104, 110 (2003) (quoting Shackleford, 32 Va. App. at 327). The expert pointed to multiple factors which brought her to that conclusion.

First, the expert stated that the largest dose of cocaine she has seen taken by a user is an "8-ball," which is 3.5 grams. Here, the amount was larger, around 6 grams. "Possession of a controlled substance in 'a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" Williams v. Commonwealth, 52 Va. App. 194, 202 (2008) (quoting Monroe v. Commonwealth, 4 Va. App. 154, 156 (1987)). Second, she testified that the street value was more than what a typical user purchases, amounting to between $300 to $600. The expert went on to state that she had never seen a user spend more than $300 to buy cocaine, and buyers typically use the cocaine within thirty minutes to an hour of purchasing.

Third, there were no ingestion devices found in appellant's car or on his person. Lastly, the bag contained nineteen individually and similarly wrapped bags of cocaine, along with one larger bag of cocaine. All of these factors listed by the expert are important when determining whether appellant possessed the intent to distribute the cocaine. See Shackleford, 32 Va. App. at 327.

The trial court was entitled to consider the expert's testimony to determine whether the Commonwealth had provided sufficient evidence to prove beyond a reasonable doubt that appellant possessed the intent to distribute the cocaine. See Askew, 40 Va. App. at 111. The totality of the evidence supports the trial court's finding that appellant possessed the intent to distribute the cocaine.

CONCLUSION

Accordingly, we affirm the appellant's conviction.

<u>Affirmed.</u>